IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03766-PAB-KLM

MERCEDES SUSAN MANDELL,

    Plaintiff,

v.

UNIVERSITY OF COLORADO, through its Board, The Regents of the University of Colorado, a body corporate,
VESNA JEVTOVIC-TODOROVIC, Chair of Anesthesiology Department, in her individual capacity, and
JOHN REILLY, Dean of the School of Medicine, in his individual capacity

    Defendants.

---

# ORDER

This matter is before the Court on Defendant's Motion to Enforce Settlement [Docket No. 57]. Plaintiff filed a response in opposition. Docket No. 60. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## I. BACKGROUND

Plaintiff filed this lawsuit on December 22, 2020. Docket No. 1. On April 14, 2021, plaintiff amended her complaint. Docket No. 35. The amended complaint raises claims of discrimination, hostile work environment, and retaliation in violation of Title VII, violations of § 504 of the Rehabilitation Act, violations of the ADA, retaliation in violation of the FMLA, discrimination and retaliation under the ADEA, and violations of 42 U.S.C. § 1983 contrary to plaintiff's rights under the First and Fourteenth Amendments. *Id.* at 40-47. Plaintiff's claims arise under the conditions of her employment as a tenured

professor at the University of Colorado's Health Sciences Center.  *Id.* at 1-2, 4, ¶¶ 1, 17, 20.

The parties agreed to pursue private mediation in this case with former U.S. Magistrate Judge Boyd Boland.  Docket No. 57 at 2.  On May 11, 2021, the parties completed a twelve hour mediation session.  *Id.*  At the end of the mediation, the parties signed a settlement term sheet (the "Term Sheet") that resolved plaintiff's claims.  *Id*.  The Term Sheet states that the parties "will enter into a final settlement agreement and release" including the essential terms listed in the Terms Sheet.  Docket No. 57-1 at 1, ¶ 1.  The Term Sheet states that the University of Colorado "will pay a total of $360,000 to settle all claims asserted or that could have been asserted in [this case]" to plaintiff providing "$285,000 for lost wages" and "$75,000 . . . for attorney fees and costs."  *Id.* at 2, ¶ 1.j.i., 1.j.ii.  The Term Sheet also provides that "[p]laintiff . . . releases and forever discharges the University, and its current and former employees, officers, directors, agents, contractors, and all other persons, corporate or natural, affiliated with the University in both their individual and official capacities, from any and all liabilities claims . . . and causes of action of whatsoever kind."  *Id.*, ¶ 1.m.  Plaintiff and the University of Colorado (the "University"), as well as their respective attorneys, signed the Term Sheet.  *Id.* at 3-4.  Paragraph 2 of the Term Sheet states that:

> [t]he parties understand and agree that this Settlement Term Sheet is binding and enforceable.  The Parties and mediator consent by this writing, pursuant to C.R.S. § 13-22-307(2)(a), that this Settlement Term Sheet may be submitted to a court or other appropriate tribunal, if necessary, to prove the existence and terms of the settlement and for enforcement.

*Id.* at 3, ¶ 2.

On May 18, 2021, counsel for the University sent a draft final settlement agreement to plaintiff's counsel. Docket No. 57 at 3. Plaintiff has not signed the agreement and, instead, seeks to make two alterations to the Term Sheet. *Id.* Plaintiff seeks to increase the amount of lost wages the University will pay plaintiff and to exclude Employment Compliance Services ("ECS") from the release of liability in paragraph 1.m. of the Term Sheet. Docket No. 60 at 11. The University filed the instant motion seeking to enforce the Term Sheet as it is written. Docket No. 57.

## II. LEGAL STANDARD

Generally, a "trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) (citation omitted); *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001) ("A court may summarily enforce a settlement agreement if it is undisputed that a settlement exists"). Additionally, "[i]ssues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). Here both parties assume, as does the Court, that the Term Sheet should be construed pursuant to Colorado law.

## III. ANALYSIS

Defendant asserts that the Court has authority to enforce the Term Sheet without any modifications. Docket No. 57 at 6-7. By contrast, plaintiff requests that the Court hold a hearing in order to reform the Term Sheet to correct the amount due to plaintiff, or in the alternative, rescind the Term Sheet so the parties can renew settlement negotiations. Docket No. 60 at 11-12. Defendant opposes plaintiff's request for a

3

hearing.  Docket No. 61 at 5-6.  The Court agrees that it has the power to enforce the settlement agreement.

First, plaintiff argues that, based on a mutual mistake, the parties incorrectly determined the calculation of plaintiff's lost wages.  Docket No. 60 at 9-10.  Plaintiff argues that the parties agreed to calculate her wages "based upon Plaintiff's wages had she been able to work, proportionately allocated over the course of her time on disability through Plaintiff's seventieth (70th) birthday, less the amount that Plaintiff already collected, or would collect, via disability insurance."  *Id*. at 3.  Plaintiff states that the parties calculated her wages for 36 months instead of 47 months for a total of $720,000 instead of $940,000.  *Id.* at 4.  She also argues that the parties deducted the wrong amounts for payments the University made to plaintiff in 2019 and for long term disability, deducting $122,000, $127,000, and $150,000 when the proper deductions are $89,283, $144,000, and $136,000 respectively.  *Id.* at 5.  Plaintiff states that, in total, she should be paid $534,717 instead of $285,000 in lost wages after deductions.  *Id.*  Plaintiff claims that counsel for the University agreed to her method of calculating her lost wages and deductions in an email on April 30, 2021.  *Id.* at 3.  Plaintiff argues that this discrepancy in calculation is a mutual mistake that requires reformation or recission of the Term Sheet.  *Id.* at 11.

Under Colorado law, reformation based upon mutual mistake is only appropriate where a written instrument does not reflect the agreement of the parties.  *Segelke v. Kilmer*, 360 P.2d 423, 426 (1961).  "[T]he alteration sought to be made to the written instrument must be one to which the parties have earlier assented and which by mistake was either omitted or incorrectly set forth in the final instrument."  *Id.*  Plaintiff

4

does not argue that a term was omitted from the Term Sheet, but instead that her lost wages were incorrectly set forth in the Term Sheet and that an email from counsel for the University evidences the parties' agreement to her method of calculation. Docket No. 60 at 3. However, in the email, counsel for the University states that plaintiff "is looking for a resolution" based on her calculations and asks if "that general framework [is] incorrect" regarding the terms plaintiff seeks. Docket No. 60-1 at 2. Nothing in the email suggests that the University agreed to plaintiff's calculations; instead, it suggests plaintiff's claimed starting point for negotiations. *See id.*

Plaintiff also argues that the parties agreed to her calculation method during the mediation, but provides no evidence of this. Docket No. 60 at 4. Plaintiff states that the parties agreed on plaintiff's pay and the amount of time she should be compensated for. *Id.* She does not explain how the parties errantly arrived at a different number for plaintiff's wages. *See id.* The Term Sheet does not state the basis for calculating either plaintiff's lost wages or any deductions. *See* Docket No. 57-1 at 2, ¶ 1.j.i. It only states that plaintiff will receive "$285,000 for lost wages". *See id*. "[C]hanging the terms of any written instrument by reformation is a solemn matter and such equitable relief is granted only when the evidence is clear, unequivocal and indubitable." *Segelke*, 360 P.2d at 426. Plaintiff has provided no evidence, outside of her own assertions, that the University agreed to her method of calculation for lost wages. This is far from clear and unequivocal evidence of an agreement. Accordingly, the Court will not reform the Term Sheet regarding plaintiff's lost wages. As the Court does not find reformation to be appropriate, the Court will also decline to hold a hearing on how to appropriately reform the Term Sheet.

5

Next, plaintiff argues that, if the Court does not reform the Term Sheet, it should instead rescind the Term Sheet based on the parties' mutual mistake as to lost wages. Docket No 60 at 11.  Defendant argues that there was no mutual mistake between the parties and the Term Sheet should not be rescinded.  Docket No. 61 at 5.

Under Colorado law, where a mutual mistake "prevented the true meeting of the minds needed to form a contract" the contract is void.  *England v. Amerigas Propane*, 395 P.3d 766, 771 (Colo. 2017).  A claim of mutual mistake has three elements: (i) "the mistake must be mutual," (ii) "the mistaken fact must be material," and (iii) "the mistaken fact must be a past or present existing one."  *Id.*  A mistake is "a clear impression in the minds of the parties as to the existence of a material fact . . . on which both parties relied and acted, which fact did not exist."  *Hailpern v. Dryden*, 389 P.2d 590, 593 (Colo. 1964) (quotation omitted).  While plaintiff asserts her calculation could be one way to resolve the parties' issue, plaintiff has not provided any evidence of a fact which the parties believed did not exist.  If, as plaintiff argues, the parties agreed to the amount of time she was to receive lost wages and the deductions that should be applied, *see* Docket No. 60 at 4, plaintiff identifies no fact the parties believed to be true that was not true at the time of the agreement on the Term Sheet.  She asserts that the parties used 36 months instead of 47 to determine her lost wages, but does not state what fact defendant mistakenly believed to reach 36 months.  *See id*.  Additionally, she does not assert that the incorrect numbers were a simple scrivener's error in recording.  *See id.*  As plaintiff provides no facts to support her argument that the parties reached their calculations in error, the Court finds there was no mutual mistake as to the amount of plaintiff's lost wages.

6

Finally, plaintiff argues that "there was never a meeting of the minds or assent to all essential terms of any proposed settlement, and specifically no meeting of the minds or assent to a release of all claims as to non-party ECS." *Id.* at 10.  Generally, "when parties to a contract ascribe different meanings to a material term of a contract, the parties have not manifested mutual assent, no meeting of the minds has occurred, and there is no valid contract." *Sunshine v. M.R. Mansfield Realty, Inc.*, 575 P.2d 847, 849 (Colo. 1978).  Plaintiff does not argue that the parties gave different meanings to the term releasing liability of ECS in paragraph 1.m. of the Term Sheet.  Docket No. 60 at 6-7.  She argues instead that the inclusion of this claim was error.  *Id.* at 10.  Plaintiff does not properly demonstrate that there was no meeting of the minds.  She also does not assert that it was a mutual mistake based on a fact that does not exist.  *See id.*  She states only that it was not the parties "intent."  *Id.* at 6.  Plaintiff argues that because the parties did not discuss the term's application to ECS specifically, it cannot be included in the settlement, but does not explain why this makes the term unenforceable.  *Id.*  As plaintiff does not identify a fact that defendant mistook, this cannot be a mutual mistake.  If plaintiff did not intend for this provision to be included, it would merely constitute a unilateral mistake.  The Colorado Supreme Court has noted that "where a mistake of one party occurs as to a basic assumption the contract is voidable only if enforcement of the contract would be unconscionable or the other party had reason to know of the mistake." *Powder Horn Constructors v. City of Florence*, 754 P.2d 356, 364 n.7 (Colo. 1988).  This requirement is in place to ensure "that avoidance of the contract will not unreasonably disappoint the expectations of the party not causing the mistake."  *Id.*  Here, plaintiff does not allege that the settlement is unconscionable.  *See* Docket No. 60

at 10-11.  She also does not argue that defendant should have known of the mistake; on the contrary, plaintiff argues the parties did not discuss the inclusion of ECS specifically.  *Id.* at 6.  In order to maintain the expectations of defendant, plaintiff's mistake cannot void the contract.  As plaintiff has not demonstrated a mutual mistake or a lack of enforceability, the Court finds that the Term Sheet constitutes an enforceable contract and will enforce it.

## IV. CONCLUSION

Accordingly, it is

**ORDERED** that Defendant's Motion to Enforce Settlement [Docket No. 57] is **GRANTED**.  It is further

**ORDERED** that on or before **April 29, 2022** the parties shall file a joint Stipulation of Dismissal.

Dated: March 29, 2022

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge